# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>JUNIPER NETWORKS, INC.<br><br>Defendant. | Civil Action No.: 6:20-cv-00812-ADA<br>6:20-cv-00813-ADA<br>6:20-cv-00814-ADA<br>6:20-cv-00815-ADA<br>6:20-cv-00902-ADA<br>6:20-cv-00903-ADA<br><br>**JURY TRIAL DEMANDED** |

## JUNIPER NETWORKS, INC.'S OPPOSED MOTION TO MODIFY PROTECTIVE ORDER

I.      **INTRODUCTION**

Juniper respectfully requests that the Court make a small modification to the protective order that was entered on June 1, 2021—just six days ago. This version of the protective order includes a patent prosecution bar which prevents individuals who receive confidential information only from prosecuting patent applications *on behalf of the receiving party* or an affiliate. Juniper has learned that one of WSOU's proposed experts/consultants is currently prosecuting patent applications and potentially drafting and amending patent claims related to confidential information Juniper may disclose in this action, including Juniper's highly confidential technical documentation and source code. This presents a significant risk of inadvertent disclosure or tailoring of patent applications and claims to read on Juniper's products. Notably, in several other cases WSOU recently agreed to the entry of a protective order that includes a prosecution bar that prevents individuals who receive confidential information from prosecuting patent applications on behalf of anyone, not just the receiving party. The minor modification Juniper requests to the protective order in this action would thus be in line with a protective order WSOU has recently agreed to. Despite the facts that the protective order in this case was entered just six days ago and that it would suffer no prejudice, WSOU refuses to agree to this amendment. Because the logic supporting patent prosecution bars applies with equal force regardless of who individuals with access to confidential information prosecute patents for, Juniper respectfully asks that the Court enter the modified protective order attached as Exhibit A to the Declaration of Todd M. Briggs.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

On May 4, 2021, the parties jointly moved the Court to enter a protective order governing these cases. Dkt. 55-56.[1] The Court entered the protective order and it became effective on June

---

[1] Unless otherwise indicated, all docket cites are to Case No. 6:20-cv-00812-ADA.

1, 2021. Dkt. 73. The agreed protective order included the below "patent prosecution bar" language.

> Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and/or " HIGHLY CONFIDENTIAL – SOURCE CODE" and directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit ***on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate*** during the pendency of this Action and for one year after its conclusion, including any appeals or two years after such person last reviewed the HIGHLY SENSITIVE MATERIAL, whichever is earlier. These prohibitions shall not preclude the parties' litigation counsel from participating in any inter partes review, CBM, or post-grant review proceedings, provided there is no attempt to amend any claims in the proceedings by any counsel for patent owner during the course of the proceedings. To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise or assist  in the preparation or prosecution of any patent application pertaining to the field of invention of the patent-in-suit.

Dkt. 73, ¶ 11 (emphasis added).

On May 18, 2021, approximately two weeks prior to the Court's entry of the protective order, WSOU disclosed various consultants to which it intended to disclose confidential information, including a Mr. Chris Hardee. On May 26, 2021, Juniper notified WSOU that Juniper objected to Mr. Hardee's receipt of Juniper's confidential information on the grounds that Mr. Hardee appears to be involved in patent prosecution activities. After further inquiry, it appears that Mr. Hardee may be involved in such activities for technologies relating to the patents-in-suit and the highly confidential technical information that Juniper will disclose during fact discovery. Juniper raised its concerns with WSOU and continued to object to the disclosure of Juniper's confidential information to Mr. Hardee. In response, WSOU contended that such disclosure was

proper because the patent prosecution bar only restricts individuals who receive confidential information from engaging in patent prosecution activities **"on behalf of the receiving party"** or an affiliate thereof. Concerned that that carveout would not provide adequate protection for Juniper's highly confidential technical materials (including its source code), Juniper requested that WSOU agree to modify the patent prosecution bar to prevent those receiving confidential information from engaging in patent prosecution activities for *anyone* within the designated time period. WSOU and its counsel refused, even though they agreed to the same provision in other cases brought by WSOU.[2] The parties met and conferred by phone on June 1, 2021 and then again on June 4, 2021, but were unable to resolve the dispute.

### III.    LEGAL STANDARD

Federal Circuit law governs the "determination of whether a protective order should include a patent prosecution bar." *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). The logic behind patent prosecution bars is straightforward: "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Id.* (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)). Thus, a patent prosecution bar is designed to mitigate the risk of inadvertent disclosure of a party's confidential information by someone associated with the receiving party in prosecuting patents in the same or related field. *Id.*; *see also U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) (patent prosecution bar is proper where there is "an unacceptable opportunity for inadvertent disclosure"). "[A] party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities

---

[2]  WSOU, in a set of cases in which it is represented by the same law firm, agreed to the same patent prosecution bar language it now resists. *See, e.g., WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Hewlett Packard Enterprise Co.*, Case No. 6:20-cv-00783-ADA, Dkt. 44, ¶ 16.

prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Deutsche Bank*, 605 F.3d at 1381.

IV. **ARGUMENT**

    A. **Juniper's proposed amendment to the patent prosecution bar is proper.**

The parties agree that the protective order governing this case should include a patent prosecution bar. Dkt. 55, ¶ 11. The parties also agree that "the information designed to trigger the bar" and "the subject matter covered by the bar" (*Deutsche Bank*, 605 F.3d at 1381) should be information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—SOURCE CODE," limited to technical information as opposed to financial or other non-technical information. Dkt. 55, ¶ 11. And the parties agree that the proper "duration of the bar" (*Deutsche Bank*, 605 F.3d at 1381) is "the pendency of this Action and for one year after its conclusion, including any appeals or two years after such person last reviewed the HIGHLY SENSITIVE MATERIAL, whichever is earlier." Dkt. 55, ¶ 11.

Thus, the only disagreement is over "the scope of activities prohibited by the bar." *Deutsche Bank*, 605 F.3d at 1381. And the dispute is straightforward: Juniper believes that persons subject to the patent prosecution bar should not be permitted to prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit on behalf of anyone. WSOU believes—and the current protective order provides—that persons given access to confidential information should be prohibited from engaging in such activities ***only*** "on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate." Dkt. 73, ¶ 11.

This narrow version of the prosecution bar presents an unacceptable risk of inadvertent disclosure of Juniper's confidential information, including its most sensitive source code.[3] Under the current version, individuals who receive Juniper's confidential technical information and source code could prosecute patents in the same field, as long as they do so on behalf of someone other than WSOU. For example, individuals who receive Juniper's confidential information could prosecute patents and draft or amend claims for Juniper's competitors or other patent holders that could potentially assert their patents against Juniper in the future. There is no reasonable justification for such a loophole. The logic behind the patent prosecution bar applies with the same force regardless of on whose behalf the individual receiving confidential information prosecutes patents. In other words, it is no easier "for the human mind to compartmentalize and selectively suppress information once learned," and thus the risk of inadvertent disclosure is no lower, when the individual receiving confidential information prosecutes patents on behalf of someone other than the receiving party. *Deutsche Bank*, 605 F.3d at 1378. Thus, the patent prosecution bar should prevent individuals granted access to confidential information from prosecuting patents in the same field as the inventions of the patents-in-suit, on anyone's behalf.

    **B.**    **The patent prosecution bar Juniper seeks is consistent with model patent prosecution bars, and with a patent prosecution bar to which WSOU has agreed in other cases.**

Juniper's proposed patent prosecution bar is consistent with the patent prosecution bar provisions of model protective orders in other districts. For example, the Northern District of California's model protective order for patent cases provides that "any individual who receives access to 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' [Optional: or 'HIGHLY CONFIDENTIAL – SOURCE CODE'] information shall not be involved in the prosecution of

---

[3] Because WSOU is a non-practicing entity with no source code or other technical information to disclose, the risk of inadvertent disclosure is a one-way street in this case.

patents or patent applications relating to [insert subject matter of the invention and of highly confidential technical information to be produced], including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ('the Patent Office'),"  without limiting the bar based on who the individual engages in prosecution activities for.[4]

Additionally, WSOU agreed to substantively the same bar in another set of cases—cases in which it is represented by the same lawyers who represent it here. *See, e.g., WSOU Investments, LLC d/b/a Brazos Licensing and Development v. Hewlett Packard Enterprise Co.*, Case No. 6:20-cv-00783-ADA, Dkt. 44, ¶ 16. ("Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, CONFIDENTIAL - SOURCE CODE, and/or CONFIDENTIAL – RESTRICTED SOURCE CODE and directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit during the pendency of this Action and for one year after its conclusion, including any appeals."). The Court should

---

[4] *See* N.D. Cal. Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets, ¶ 8 (available at https://www.cand.uscourts.gov/forms/model-protective-orders/).

reject WSOU's argument that a patent prosecution bar that is consistent with the prosecution bar in model protective orders, *and with a bar to which WSOU recently agreed*, is somehow improper.

### C. Modifying the protective order would not prejudice WSOU.

While WSOU has asserted in a conclusory way that it would be prejudiced by a change to the protective order, it can identify no real or specific prejudice.  As an initial matter, fact discovery has not begun yet: the *Markman* hearing has been postponed until June 24 (Dkt. 68), and fact discovery (except discovery related to venue, jurisdiction, and claim construction) "is stayed until after the *Markman* hearing."  Dkt. 26 (OGP) at 2; *see also* Dkt. 38 (Scheduling Order) at 3 (providing that fact discovery opens and initial disclosures must be served "1 business day after *Markman* hearing").[5]  Thus, fact discovery opens on June 25.  But even had fact discovery opened as originally scheduled on June 4, WSOU would not be prejudiced by Juniper's proposed change to the protective order.  It would not have technical documents for its experts to review for at least 30 days from that date, and has not requested to begin source code review until June 21.  Briggs Decl., Ex. C.  There would thus be little to no prejudice to WSOU if it had to replace one of its (at least) three source code reviewers before that reviewer has reviewed any source code or received any other confidential information.  Moreover, WSOU could not have disclosed any confidential Juniper information to any of its experts/consultants until the protective order in this case was entered by the Court, which was just six days ago.

### D. Juniper has not "waived" its right to object to any particular expert or to move the Court to modify the protective order.

During the parties' meet and confer efforts, WSOU has claimed that Juniper "waived" its right to challenge disclosure to Mr. Hardee.  The portion of the protective order WSOU relies on

---

[5]  WSOU reads "the *Markman* hearing" in the OGP and the Scheduling Order to mean "the date originally set for the *Markman* hearing."  This reading cannot be squared with the orders' plain language.

for this idea provides that experts and outside consultants can receive confidential information provided that "before access is given, the consultant or expert has completed the Undertaking attached as Exhibit A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert at least seven (7) days before access to the Protected Material is to be given to that consultant to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert." Dkt. 73, ¶ 5(e). The protective order says nothing about waiver.[6]

Of further note, the protective order on which WSOU relies for its waiver argument had not been signed, and thus did not govern, until June 1, 2021—after WSOU disclosed its outside consultants. Dkt. 73. The seven-day deadline WSOU relies on thus did not control at the time it made the disclosures to which it seeks to apply that deadline. But in any event, certainly nothing in the protective order provides that Juniper has waived its right to ask the Court to *modify the protective order*, as it does via this motion.

While Juniper attempted to identify any problematic issues and address them while the parties were negotiating the protective order, Juniper did not become aware of this particular issue until WSOU disclosed Mr. Hardee and his patent prosecution activities. However, upon learning of this issue, Juniper promptly raised the present motion to modify the protective order. This modification provides the necessary protections against inadvertent disclosure of Juniper's

---

[6] WSOU also cites paragraph 5(e) of the protective order for its position that Juniper waived its right to move for a protective order preventing disclosure to Mr. Hardee because it did not do so within seven days of informing WSOU of its objection. But the same paragraph provides that "the objecting Party may file a motion with the Court within seven (7) days of the notice, *or within such other time as the Parties may agree*." Dkt. 73, ¶ 5(e) (emphasis added). WSOU continued to meet and confer with Juniper past the seven-day period on which it now relies, and the Court should reject any attempt by WSOU to negotiate past the seven-day mark and then assert that Juniper waived any rights by not filing a motion within those seven days.

confidential information and source code.  In addition, there can be no prejudice to either party, as Juniper has brought this motion just six days after the Court entered the original protective order and before any confidential information has been disclosed to any experts/consultants in this case.

## V.    CONCLUSION

Juniper respectfully asks that the Court grant its motion and modify the protective order as indicated in the attached Exhibit A to the Declaration of Todd M. Briggs.

DATED: June 7, 2021 Respectfully submitted,

By     */s/ Todd M. Briggs*
Todd M. Briggs

B. Russell Horton
rhorton@gbkh.com
George Brothers Kincaid & Horton LLP
114 West 7th Street, Suite 1100
Austin, TX 78701
Telephone: (512) 495-1400
Facsimile: (512-499-0094

Kevin P.B. Johnson
kevinjohnson@quinnemanuel.com
Todd Briggs
toddbriggs@quinnemanuel.com
Margaret Shyr (*pro hac vice*)
margaretshyr@quinnemanuel.com
Joseph E. Reed (*pro hac vice*)
joereed@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Nima Hefazi *(pro hac vice*)
nimahefazi@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Counsel for Defendant*
*Juniper Networks, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on June 7, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated:  June 7, 2021                                    */s/  Todd M. Briggs*
                                                                Todd M. Briggs